IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SIGNET MARITIME CORPORATION** | § § § | |
| **Plaintiff** | § | |
| V. | § § | CA. NO. 4:24-cv-3049 |
| | § § | |
| **NFE TRANSPORT PARTNERS LLC** | § § § | **IN ADMIRALTY** |
| **Defendant** | § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Plaintiff, Signet Maritime Corporation ("Signet"), by and through undersigned counsel, and files this Original Complaint against NFE Transport Partners LLC ("NFE") and alleges the following:

## I.   JURISDICTION AND VENUE

1. Subject matter jurisdiction of this Honorable Court is based on admiralty and maritime jurisdiction under 28 U.S.C. § 1333. This case is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue for this civil action is proper in the District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Texas. Moreover, the parties stipulated and agreed to the exclusive jurisdiction and venue of this District.

1

## II.     PARTIES

3.      At all times material hereto, Signet is a corporation organized under the laws of Delaware, is registered and authorized to do business in Texas, and has its principal office and place of business located at 1300 Post Oak Boulevard Suite 600, Houston, Texas 77056.

4.      Signet is an international marine transportation and logistics services company specializing in cargo handling, towing and tugboat services, and ship management and vessel design.  Signet operates a fleet of over twenty-five vessels with offices in Houston, Ingleside, Brownsville, Pascagoula, Morgan City, Jacksonville, and Dubai.

5.      At all times material hereto, NFE Transport Partners LLC was and still is a limited liability company organized under the laws of Delaware, with its principal office and place of business located at 111 West 19th Street, New York, New York 10011.  NFE is a subsidiary of New Fortress Energy, and entered into an oral charter party with Signet for towage services for a floating storage unit, the NFE PENGUIN FSU.

## III.     SUMMARY OF PLAINTIFF'S CLAIM

6.      This is an action stemming from the breach of a maritime contract between Signet and NFE.  Signet alleges, and will prove, that Signet and NFE had a valid, binding oral charter party (the "Charter Party") whereby Signet would ready its tugboats, the SIGNET WARHORSE II and the SIGNET WARHORSE III, deliver them to NFE in Pascagoula, Mississippi, sail to Altamira, Mexico, make fast to the NFE PENGUIN FSU, a floating storage unit, and perform towage operations for NFE.  After the parties agreed on all main terms of the Charter Party, Signet began readying its tugboats and crews, ordered cordage, procured stores, and purchased fuel, all on NFE's instructions. Signet's tugboats were delivered and standing by in Pascagoula, Mississippi for orders from NFE.   Days after the parties agreed on the main terms of the Charter

Party, however, NFE decided it did not need Signet's tugboats to move the PENGUIN FSU and attempted to cancel the Charter Party, despite the parties specifically agreeing that there would be "No Cancellation Allowed". NFE then attempted to deny any commitment by NFE on the grounds that the parties did not formally sign a BIMCO form charter party. However, US Maritime law is unequivocal that a charter party is made when there is agreement on the main terms. *See U. S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 149-50 (2d Cir. 2001)[1]; *Majestic Marine Co. v. Atkinson & Mullen Travel, Inc.*, 2005 U.S. Dist. LEXIS 4822, at *4 n.2 (E.D. Pa. Mar. 1, 2005). Nonetheless, after repeated demands by Signet for its damages under the Charter Party as a result of NFE's cancellation, NFE represented on June 8, 2024 that they would resolve the outstanding amount due and owing to Signet under the Charter Party by Monday, June 10, 2024. However, NFE has failed, refused and/or neglected to make payment to Signet as promised. This lawsuit follows.

### IV.    FACTS AND APPLICABLE CASE LAW

7.    On October 3, 2023, Captain Mark Lane of New Fortress Energy contacted Signet to "discuss tugs" for its upcoming PENGUIN FSU mooring project. *See* of e-mail hereto as EXHIBIT A. After receipt of the e-mail contained in Exhibit A, Signet called Captain Lane to discuss NFE's tugboat requirements, and the parties agreed to meet at NFE's office in Houston,

---

[1] "Charter parties are formed in two stages. First, significant 'main' terms are negotiated through brokers. These terms usually include the name of the charterer, name of owner, ship, and its characteristics, time and place of delivery, duration of charter, place of redelivery, hire rate, printed form upon which the contract is based, and any other term that a party deems important. These are considered the 'bare-bones' of the contract. The 'main' terms when agreed upon are entitled a 'fixture.' Second, after a 'fixture' has been reached, the parties continue to negotiate 'details' amending the form contract specified in the 'fixture.' These minor or side issues 'flesh-out' the original agreement or fixture. The 'details' include a wide variety of matters, for example: fuel used, speed of vessel, condition of ship's holds, exact time of ship's delivery to charterer, brokerage, breakdown, bunkering, option to extend charter, cargo capacity, demurrage and whatever else is deemed by the parties to be of minor importance."

Texas the following day to review mooring "simulations" and to discuss operational aspects of the mooring project.

8. On October 4, 2023, Signet met with NFE at NFE's office in Houston to discuss the FSU mooring project. NFE required the use of Signet's "Warhorse" class tugboats for its upcoming project, and the parties agreed to negotiate a charter party for Signet's WARHORSE II and WARHORSE III. At the October 4, 2023 meeting, NFE requested Signet to provide NFE with a draft BIMCO Towhire for the WARHORSE II and WARHORSE III so that the parties could negotiate the main terms of the Charter Party.

9. On October 5, 2023, Signet sent the first draft of the Towhire to NFE, stating "We expect to have SIGNET WARHORSE II and SIGNET WARHORSE III both readied for departure from Pascagoula, Mississippi by October 10 to arrive Altamira, Mexico October 12/13. We look forward to hearing your comments." *See* e-mail hereto attached as EXHIBIT B. Notably, the first draft of the Towhire provided for a daily rate of USD 48,000 per tugboat, with a minimum "firm" period of hire of 8 days. *See* first draft of Towhire attached hereto as EXHIBIT C at p. 2, ¶¶ 33, 35.

10. That same day, NFE responded to Signet's October 5th e-mail providing additional requirements to Signet, including details of the cordage NFE required for its project. NFE's e-mail further stated that "We will revert on the BIMCO [Towhire]". *See* e-mails hereto attached as EXHIBIT D.

11. Signet responded to NFE's October 5th e-mail, that same day, confirming its attendance at the October 6th Teams meeting, and advising NFE that Signet had sourced cordage per NFE's stated requirements. Signet also provided an invoice for the cordage from "SWOS"

4

rope solutions in the amount of USD 19,705.  *See* e-mail attached hereto as EXHIBIT E; *see also* SWOS cordage quote attached hereto as EXHIBIT F.

12. On Friday, October 6, 2023, Signet again confirmed via e-mail its attendance on the Teams call to discuss "progress with securing ASD tugs, procurement of cordage, comments on Warhorse Class Towhires." *See* Exhibit E, p. 2.  During the Teams meeting, NFE and Signet negotiated Signet's daily hire rate of USD 48,000 per tugboat.  The parties instead agreed to a daily hire rate of USD 37,200 per tugboat, with a minimum "firm" period of hire of 9 days.  NFE then requested that Signet update the first draft of the Towhire to reflect the agreed upon daily rate and firm period negotiated during the Teams meeting.  At this Teams meeting, the parties thereby agreed on the "main terms" of the Charter Party and a "fixture" was reached, with the details to be "fleshed out" in the BIMCO Towhire.  *Id.* at pp. 1-2*; see also* second draft of the Towhire attached hereto as EXHIBIT G at p. 2, ¶¶ 33, 35.  Notably, Signet's e-mail on October 6th transmitting the second draft of the TOWHIRE states at the very beginning "Following todays call, we have agreed in principle to the commercial terms of SIGNET WARHORSE II and SIGNET WARHORSE III, please see updated Towhire…attached, for your review." *Id.*  Signet ended its e-mail with "We look forward to your comments and/or affirmation of fixture." *Id.*

13. On Monday, October 9, 2023, NFE responded to Signet's October 6th e-mail to provide its comments to the second draft of the Towhire and affirm the fixture.  Specifically, NFE stated the following:

> Good morning, Mr. Sanna,
>
> Please make the edits below in the TOWHIRE forms for the WH II & III and return execution copies to my attention this morning.
>
> 1.  Box 7: Majuro, Marshall Islands Flag
> 2.  Box 8:  Energos Penguin Sub Cop.
> 3.  Box 9: Lloyd's Register

5

> **I'll get these signed and the funding process started – today**.
>
> We appreciate your offer for the Signet Weatherly but have decided to pass on her.
>
> I'll call you later this morning to discuss fendering, cordage and voyage instructions.
>
> Thank you and kind regards,
>
> CMKL

*See* e-mail attached hereto as EXHIBIT H. (emphasis added).

14. NFE again e-mailed Signet on October 9, 2023 with "one final edit: Box 10 should be 'Skuld.'" *See* e-mails attached hereto as EXHIBIT I, p. 2.

15. Signet responded to NFE's October 9th e-mail with a third draft of the Towhire, stating that "If all is in order, we will prepare a clean execution version." *Id.* NFE responded that the "document appears to be in good order. Please prepare the execution version." *Id.,* p. 1. Indeed, Signet prepared the execution version of the Towhire, and sent it to NFE with signature. *Id.*; *see also* "execution version" of Towhire attached hereto as EXHIBIT J. Specifically, the parties' agreement of all of the "main terms" of the Charter Party were incorporated into the Towhire "execution version", which reflected a daily rate of "USD 37,200 per day excluding fuel and lubes, water and damaged towlines and cordage" for the SIGNET WARHORSE II and a daily rate of "USD 37,200 per day excluding fuel and lubes, water and damaged towlines and cordage" for the SIGNET WARHORSE III. Exhibit J*,* at p. 2, ¶ 33. The Towhire further contained a minimum period of hire of "9 days firm (minimum firm period)" as was agreed by the parties at the October 6th Teams meeting, and affirmed by NFE on October 9th. *Id.,* at p. 2, ¶ 35. The parties agreed to "No Cancellation Allowed." *Id.,* at p. 2, ¶ 38. The parties also agreed that the commencement of

hire would begin upon Signet's delivery of the tugboats at Pascagoula, Mississippi. *Id.,* at p. 2, ¶ 36.

16.     NFE responded "Thank you for your prompt attention to this matter today. I [sp.] push this into our execution process and hope to return the completed version to you soonest." *See* e-mails attached hereto as EXHIBIT K, p. 2.

17.     The next day, on October 10, 2023, NFE informed Signet of a scheduling change in the PENGUIN FSU mooring project but confirmed the delivery of the WARHOSE II and WARHOSE III for October 14, 2023, and that the delivery time for the cordage was acceptable. *Id.* Signet responded to NFE's October 10th e-mail on October 11, 2023, confirming Signet's preparations for the WARHORSE II and WARHORSE III and their scheduled "departure on Saturday, per your advised departure date from Pascagoula." *Id.,* p. 1. Signet further advised NFE that the WARHORSE II and WARHORSE III were taking on fuel on October 12, 2023, with a departure date of 00:01 on October 14, 2023; and that the cordage NFE instructed Signet to purchase would arrive on October 12, 2023. *Id.* At this time, both tugboats were at the agreed place of delivery to NFE in Pascagoula, Mississippi awaiting further orders. *See* Exhibit K, ¶ 36.

18.     Despite the parties agreeing on every main term of the Charter Party – and indeed, almost every term of the Charter Party – NFE advised Signet on October 13, 2023 that NFE would no longer require Signet's tugboats for its mooring project due to purported project delays. *See* e-mails attached as EXHIBIT L, p. 6. However, NFE was not entitled to cancel the Charter Party as the main terms agreed upon by the parties included a minimum period of hire of nine (9) days and there would be "No Cancellation Allowed." Exhibit K, ¶¶ 35, 38.

19.     Signet responded to NFE's October 13th e-mail attempting to accommodate NFE by offering to place the tugboats on a daily standby rate of USD 18,600 while NFE resolved its

7

purported project delays, or "to pay out the firm period (9 days) of the contract." *Id.*, p. 5. NFE responded that "For the avoidance of doubt, NFE had/has no commitment to Signet for the use of [Signet's] tug assets." *Id.*

20. After NFE breached its obligations to Signet, NFE admittedly employed other tugboats from a different tug operator for the FSU PENGUIN mooring project.

21. However, it is well settled under US maritime law, "because a shipowner requires advance notice to prepare and sail its ship to a particular port on a specific date, the parties can orally or informally agree to the main terms of a contract before reducing those terms to a complete formal writing." *See Majestic Marine Co. v. Atkinson & Mullen Travel, Inc.*, No. 02-935, 2005 U.S. Dist. LEXIS 4822, * 4 (E.D. Pa. Mar. 1, 2005)(citing *Great Circle Lines, Ltd. v. Matheson & Co., Lrd.,* 681 F.2d 121, 125 (2d Cir. 1982). "A fixture is a meeting of the minds on the essential terms, resulting in a binding contract for the rental of a ship." *Id.*

22. The court in *Toisa Ltd. v. CAMAC Int'l Corp.*, No. H-10-4177, 2012 U.S. Dist. LEXIS 74714, * 23 (S.D. Tex. May 30, 2012) further described the process of charter party practice. Specifically, the Court held that a charter party "typically involves two stages: the fixture stage and the details stage." *Id.* (citing *Cross Chartering N.V. v. R.I.P.C. (Trinidad), Ltd*., No. Civ. A. H-04-2264, 2005 U.S. Dist. LEXIS 27499, 2005 WL 2921645, at *7 (S.D. Tex. Nov. 2, 2005)). The court also held:

> The market for ships is international, and charterers and shipowners customarily deal through professional ship and charter brokers who send and receive telex and other communications all over the world. Most charter parties are ultimately reduced to writing, usually on a standard printed form, but, before the final written agreement, the 'bare bones' of a charter may be 'fixed' by an exchange of telexes. Such a charter party 'fixture' is a meeting of the minds, evidenced by the parties' communications, on the significant 'main terms' of a charter. . . . After a fixture has been reached, the parties may continue to negotiate 'details,' which are minor or side-issues 'fleshing out' the main terms.

*Id.,* (citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 11-2 (4th ed. 2004)).

23.     "Once a fixture is reached, a binding charter party has been formed." *Id.* at *24 (citing *Cross Chartering N.V.,* 2005 U.S. Dist. LEXIS 27499, 2005 WL 2921645, at *7*; Hornbeck Offshore Servs., LLC v. Fairfield Indus., Inc., Civ. A. No. 09-2905,* 2010 U.S. Dist. LEXIS 48947, 2010 WL 2008971, at *2 (E.D. La. May 17, 2010).

24.     Accordingly, under the Charter Party, Signet is entitled to USD 669,600 for the nine (9) days, firm, of hire for each tugboat that Signet chartered to NFE at USD 37,200 per day, plus the cost of the cordage and fuel. *See* Invoice to NFE attached hereto as EXHIBIT M.

25.     Signet has made numerous demands on NFE for payment before filing this lawsuit. However, NFE only made payment to Signet for the cordage and refused to pay the firm 9-day hire period under the Chater Party. It should be noted that Signet mitigated its damages, as it was able to repurpose the fuel it procured on NFE's behalf for use on other Signet tugboats, for different Signet customers, and does not claim against NFE for the cost of fuel it procured at their direction.

26.     After receiving payment for the cordage from NFE, Signet continued to make demands on NFE for payment of the firm 9-day hire period for each tugboat under the Charter Party in the amount of USD 669,600. On June 7, 2024, Signet informed NFE that a payment NFE made to Signet for other outstanding amounts NFE owed for other work Signet performed, resulted in an overpayment of USD 16,193.69. Thus, Signet provided a credit to NFE in the amount of USD 16,193.69 against the amounts owed for the unpaid hire under the Charter Party, leaving a balance of USD 653,406.31. *See* demand letter attached hereto as EXHIBIT N.

27.     On June 8, 2024, NFE responded to Signet's June 7, 2024 demand letter that NFE "will get [this] resolved by next Monday." *See* e-mail attached hereto as EXHIBIT O. NFE has failed, refused and/or neglected to make payment to Signet as agreed in NFE's June 8th e-mail.

## V.     CAUSES OF ACTION

### COUNT I – BREACH OF MARITIME CONTRACT

28.     Signet repeats and realleges each and every paragraph and allegation set forth in the preceding paragraphs as if fully set forth herein.

29.     Under the Charter Party, NFE agreed to charter Signet's WARHORSE II and WARHORSE III for a firm period of 9-days, at a cost of USD 37,200 per tugboat. The Chater Party also provided for no cancellations. After readying its tugboats and making the necessary preparations, all at NFE's direction, Signet delivered the tugboats at Pascagoula, Mississippi and awaited further orders from NFE.

30.     NFE breached the Charter Party by failing to perform, attempting to cancel the charter of Signet's tugboats, and by failing to pay Signet for the firm 9-day hire period for each tugboat it chartered. NFE further breached the Charter Party by employing other tugboats from a different tugboat operator to complete the project.

31.     As a direct result of NFE's breach of contract, Signet suffered damages in an amount to be finally determined by this Court.

32.     The foregoing acts or failures by NFE to act as contracted caused significant damage to Signet. Signet hereby seeks to recover all damages, costs, expenses, interest, and attorneys' fees that have been or may be incurred as a result of NFE's breach of the Charter Party.

## VI.     DAMAGES

33.     Plaintiff Signet repeats and realleges each and every paragraph and allegation set forth in the preceding paragraphs as if fully set forth herein.

34. As a result of the acts or failures to act by NFE, Signet is entitled to its damages under the Charter Party. Specifically, Signet is entitled to hire payments for nine (9) days, for each tugboat, at a daily rate of USD 37,200 per day.

35. Signet hereby seeks recovery of approximately USD 653,406.31 - which includes all offsets and/or credits to NFE - for all losses, damages, costs, and expenses including, but not limited to the unpaid charter hire under the Charter Party, expert fees, pre-judgment and post-judgment interest, attorneys' fees[2], costs of suit, and all other damages, costs, and expenses arising from the matters complained herein.

### VII.   CONDITIONS PRECEDENT

36. Plaintiff Signet has complied with all conditions precedent to the maintenance of all causes of action asserted in this proceeding.

### PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, Signet demands judgment against NFE as follows:

(i) Enter judgment in favor of Signet against NFE for damages as may be finally determined by this Court together with interest, reasonable attorneys' fees, and costs; and

(ii) That the Court grant such other and further relief as may be just and proper in the circumstance.

Dated: August, 14 2024                                           Respectfully submitted:

GAITAS & CHALOS, P.C.

/s/Jonathan M. Chalos

---

[2] The parties agreed under the Charter Party that the prevailing party in any lawsuit would be entitled to recover its attorney's fees.

Jonathan M. Chalos
Texas State Bar No. 24097482
Federal Bar No. 3008683
George A. Gaitas
Texas State Bar No. 2405885
Federal Bar No. 705176
1908 N. Memorial Way
Houston, TX 77007
Tel: (281) 501-1800
Fax: (832) 962-8178

*Attorneys for Plaintiff*